Emilio Nunez, J.
Plaintiff, the Board of Education of the City of New York, seeks an order adjudging defendant United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (hereinafter referred to as Union), and certain of its officers (the individual defendants), guilty of and punishing them for criminal contempt of court for their failure to obey an order of this court (Gold, J., Sept. 10, 1967), enjoining them from engaging in any strike in connection with the performance by defendant Union’s members of the duties of their employment with plaintiff Board of Education. It is crystal clear from the record before me that the defendant Union herein and its president, the individual defendant Shanker, are guilty of the contempt charged.
Heretofore plaintiff, by order to show cause dated September 10, 1967, sought a temporary injunction restraining defendants from striking. The motion for such relief was scheduled to be heard on September 12, 1967, and, pending the hearing, the court, through the medium of an interim stay contained in said order to show cause, temporarily enjoined defendants.
At the conclusion of the hearing and oral argument on September 12,1967, this court directed that the temporary restraining order of Mr. Justice Gold “ is, in all respects continued as well as the preliminary injunction contained in that order”.
By virtue of the foregoing continuance of the temporary restraining order beyond its original expiration on September 12, 1967, and the issuance.of a new injunction on September 14, 1967, defendants’ contention that the instant proceedings can inquire into their conduct only .up to September 12, 1967, is wholly devoid of merit.
Defendant union has urged that its members were not striking but that they had instead “ resigned.” Aside from the fact that out of a purported 40,000 “ resignations ” not a single one was either individually executed or transmitted to the plaintiff employer (all having been delivered to defendant Union instead), the court upon the conclusion of its original hearing on September 12, 1967, determined that an illegal strike actually existed and so found. Defendants, in contending that a strike is not the same as the so-called resignations, are urging a distinction without a difference; the argument is specious and sham and is rejected.
Defendants further contend that they were deprived of a fair trial as a result of certain newspaper editorials urging that the court make a prompt determination and that maximum penalties be imposed.
*943 With respect to the effect of that branch of the editorials urging a speedy disposition, the court can only note that approximately three weeks have elapsed from the inception of the hearings until the rendition of this memorandum decision. Although in view of the foregoing chronology it would appear that further elaboration on this point is not necessary, the attention of defendants’ counsel is nevertheless invited to pages 543, 544 of the stenographic transcript of the hearing wherein the court stated: “You are being tried here before a court and not before a jury. I told you before, and I assure you again, that that editorial will not, as far as I am concerned, have the slightest influence or bearing upon my decision, sir. If it had, if I allowed it to, I would have no business being a Judge; I should do something else.”
In connection with the instant application, numerous and extensive hearings were held by the court, comprising almost 600 pages of stenographic transcript. The testimony adduced at such hearings demonstrates overwhelmingly and beyond any doubt whatsoever that the defendant Union and its president, Albert Shanker, one of the individual defendants herein, have deliberately, willfully and contumaciously flouted the clear mandate of the court which restrained them from engaging in or assisting in any work stoppage against the plaintiff Board of Education. The record, despite its voluminous size, is abysmally barren of a single shred of evidence to indicate, even remotely, anything to the contrary. In fact the testimony offered at the trial indicates that the defendants began preparing for the work stoppage many months ago.
From time immemorial, it has been a fundamental principle that a government employee may not strike. In this sensitive area, neither labor — the public employee — nor management — the governmental agency — in their mutual interdependence can afford the indulgence of arbitrary self-interest at the expense of the public. This principle was reiterated in 1919 by the then Governor of Massachusetts, Calvin Coolidge, when he stated: “ There is no right to strike against the public safety by anybody, anywhere, anytime.” In his message to the Federation of Federal Employees on August 16, 1937, President Franklin D. Roosevelt stated: “ Since their own services have to do with the functioning of government, a strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of government until their demands are satisfied. Such action, looking toward the paralysis of government by those who have sworn to support it, is unthinkable and intolerable.”
*944 Upon the signing of the Condon-Wadlin Act (Civil Service Law, § 108), Governor Dewey stated, in part, that “ Every liberty enjoyed in this nation exists because it is protected by a government which functions uninterruptedly. The paralysis of any portion of government could quickly lead to the paralysis of all society. Paralysis of government is anarchy and in anarchy liberties become useless.”
The Condon-Wadlin Act enacted into statute the established common-law prohibition against strikes. The constitutionality of this statute has consistently been upheld by our courts, and the most recent pronouncement thereon can be found in City of New York v. Social Serv. Employees Union (25 A D 2d 953, decided May 24, 1966). Although the Condon-Wadlin Act was recently repealed and the Taylor Act (L. 1967, ch. 392, eff. Sept. 1, 1967) substituted in its stead, the prohibition against strikes by public employees was nevertheless carried over into the Taylor Act (§ 210, subd. 1) with the result that no question therefore exists with regard to the constitutionality of the new act insofar as it prohibits strikes.
Subdivision 1 of section 210 states in clear, unequivocal language that “ No public employee or employee organization shall engage in a strike, and no employee organization shall cause, instigate, encourage, or condone a strike.”
As heretofore stated, the evidence adduced at the hearings before the court establishes beyond all reasonable doubt that the defendant Union has clearly violated, in every conceivable aspect, the foregoing statute. What is more, the defendant Union and the individual defendant Shanker have deliberately violated the statute despite the order of the court prohibiting such conduct.
Section 211 of the Taylor Act directs that an application be made forthwith by the chief legal officer of the governmental agency involved to punish such violation as a criminal contempt, pursuant to section 750 of the Judiciary Law. Since such an application is mandatory, the governmental agency involved may not decide whether or not to so apply, and since it is without authority to make such a decision initially, it follows as a natural concomitant that it is also without authority to alter, modify, ignore or forgive any determination made by the court with respect to such application.
Transcending in importance defendants’ violation of our statutes is the fact that in doing so they have deliberately defied the lawful mandate of the court. The defendant Union, powerful though it may be, is nevertheless insufficiently powerful to disdain, with impunity, the law and the court. Our existence *945 as a free people is dependent on a healthy respect for law and order. For ours is a society open and ordered, animate and free, and it can continue so only so long as we maintain our liberties under law. Ironic indeed is the fact that this basic lesson in elementary civics must be taught anew to, of all pupils, the very persons to whom we daily entrust our tender offspring for training and development as the leaders of tomorrow.
As to the defendants other than the Union and Shanker, they were at best followers and not leaders; insufficient proof has been adduced to warrant a finding of willful disobedience and therefore to warrant granting of the relief sought, and as to such other defendants, the motion is accordingly denied.
Defendants, Albert Shanker and United Federation of Teachers, are adjudged guilty of criminal contempt of this court for their willful disobedience to its lawful mandate.
Section 751 (subd. 2, par. [a]) of the Judiciary Law (L. 1967, ch. 392, eff. Sept. 1, 1967) provides for the penalties that may be imposed upon an employee organization which willfully disobeys a lawful mandate of the court or willfully offers resistance to such mandate. The punishment for each day that such contempt persists may be a fine fixed in the discretion of the court in an amount equal to 1/52 of the annual dues of such organization or $10,000, whichever is the lesser. It is undisputed that the annual membership dues checked off by the plaintiff herein is in the approximate sum of $2,707,320 and that 1/52 thereof amounts to $52,063.84.
In order not to persist in its contempt of the court’s mandate, defendant Union had but to direct its members to return to work. Since obviously such a direction need not necessarily be confined to a working day, it could easily have been given on a Saturday or Sunday. Instead, directions to continue the strike were actually given on at least one Saturday and one Sunday. The court finds that the defendant Union’s contempt of the court’s mandate persisted from September 11, 1967, up to and including September 27, 1967, for a total of 17 days.
As commanded under section 751 of the Judiciary Law, in fixing the amount of the fine the court has carefully considered all the facts and circumstances directly related to the contempt including the extent of the willful defiance to the court’s mandate, its impact on the welfare of the community and the ability of the defendant Union to pay the fine.
The court has also considered the position of the board and the Union to refuse or agree to submit to mediation procedures. The proof before me establishes that whereas the board agreed to the terms suggested by a panel of three distinguished citi *946 zens appointed by the Mayor as mediators, the Union and Mr. Shanker flatly rejected them and deliberately lunged into a course of unlawful conduct. I have also carefully considered the Union’s claim that the board engaged in such acts of extreme provocation as to detract from the responsibility of the Union for the strike and find this contention without merit.
Law means nothing unless it means the same law for all. This strike by a powerful union against the public was a rebellion against the government; if permitted to succeed it would eventually destroy government with resultant anarchy and chaos. I have ruled upon plaintiff’s proposed findings of fact as indicated on the margin thereof. This decision and the facts marked “Found” shall constitute all the facts found by the court.
After hearing oral argument, the defendant United Federation of Teachers is fined the sum of $150,000 for its willful disobedience to the court’s lawful mandate. Defendant Albert Shanker is fined the sum of $250 and sentenced to jail for a period of 15 days for his willful disobedience of the court’s mandate.