## (October 10, 1975)

■ In the Matter of PEARL WEILL, Respondent, v ROY ERICKSON et al., Appellants, et al., Respondents.—In a proceeding (1) to invalidate the Democratic primary election held on September 9, 1975 for nomination for five public offices of Member of the City Council of the City of Long Beach and (2) to compel a new election therefor to be held, the appeal is from a judgment of the Supreme Court, Nassau County, entered October 1, 1975, which denied the application as to respondents Weisenberg, Miller, Mersel, Link, Custen and Rothschild; granted it as to petitioner Weill and appellants, Leslie, Sabbeth and Erickson; and directed that a new Democratic Party primary election be held on October 14, 1975 for nomination for three

of said offices, the only candidates for such nomination to be petitioner, Weill, and appellants, Leslie, Sabbeth and Erickson, which four parties shall be listed on the voting machines in the following order: Leslie, Sabbeth, Weill and Erickson. Judgment modified, on the law, by (1) striking therefrom (A) subdivision (c) of the first decretal paragraph and (B) the second decretal paragraph in its entirety and (2) substituting therefor a provision to the effect that the application is denied also as to petitioner, Weill, and appellants, Leslie, Sabbeth and Erickson, and adjudging that Weisenberg, Miller, Leslie, Sabbeth and Erickson were duly and validly elected to be the nominees of the Democratic Party for the above-mentioned five offices at the above-mentioned primary election. As so modified, judgment affirmed, without costs. Pearl Weill, the petitioner, was one of 10 candidates in the Democratic Party primary election held on September 9, 1975 to designate five nominees for election in the general election to be held in November to the public offices of Member of the City Council of the City of Long Beach. On the basis of results certified by the respondent board of elections, it appears that 4,153 persons voted at the election; that the five successful candidates in numerical order were Weisenberg (2,649 votes), Miller (2,384 votes), Leslie (1,890 votes), Sabbeth (1,854 votes) and Erickson (1,821 votes); and that petitioner, Weill, who finished sixth, with 1,813 votes, lost to Erickson by only eight votes, to Sabbeth by 41 votes and to Leslie by 77 votes. This proceeding was brought by petitioner under subdivision 2 of section 330 of the Election Law and by order to show cause granted on September 18, 1975 in which the other nine candidates and the Board of Elections of Nassau County were named as respondents. The proposed order to show cause as submitted to Special Term contained language directing that service could be made upon the respondents "by personal service upon them, or a member of their respective household of suitable age and discretion" on September 18, 1975. However, the order to show cause as signed directed that service be made on the respondents only "by personal service". In the petition it was alleged that more than 100 illegal ballots were cast; that petitioner was defeated for the last winning nomination by only eight votes; and that, as an aggrieved party affected by the illegal ballots, she was entitled to an order setting aside the election and directing that a new primary election be held. Upon the return of the order to show cause, Weisenberg, Leslie and Erickson appeared specially, by counsel, and contested the jurisdiction of the court as to them, on the ground that the order to show cause and the supporting papers had not been served personally upon them but only upon members of their households, with an additional copy mailed personally to them. The record indicates that petitioner did indeed utilize this mode of service for these three respondents on September 18, 1975 (i.e., the papers were actually mailed to the home address of each of these three respondents and also left with a person of suitable age and discretion at the "dwelling place" of each of these three respondents on September 18, 1975). It was contended by petitioner that the mode of service utilized by her to secure personal jurisdiction over respondents Weisenberg, Leslie and Erickson was a valid alternative method of "personal service" under CPLR 308 (subd 2). That section provides in pertinent part: "§ 308 Personal service upon a natural person Personal service upon a natural person shall be made by any of the following methods:* * * 2. by delivering the summons within the state to a person of suitable age and discretion at the * * * dwelling place or usual place of abode of the person to be served *and* by mailing the summons to the person to be served at his last known residence" (emphasis supplied). Special Term

rejected petitioner's argument and held that even if service under CPLR 308 (subd 2) was authorized by the terms of the order to show cause, said service could not be completed (by the mailing aspect) within the time period prescribed by statute to institute the instant proceeding, i.e., by September 19, 1975, namely within 10 days after the primary date of September 9, 1975 (Election Law, § 330, subd 2). Nevertheless, Special Term held that personal delivery of the papers on the remaining respondents on September 18, 1975 was sufficient to give the court jurisdiction to entertain the proceeding and to determine the issues raised as to the validity of the election. Regarding the merits of the petition, Special Term found that 120 ineligible ballots were cast in the election; that the number of ineligible ballots was sufficiently large, when weighed against the much smaller respective winning margins of respondents Erickson, Sabbeth and Leslie over petitioner's total vote, to make it not at all improbable that the result of the election would be changed as to petitioner and these three respondents by a shift in, or invalidation of, any ineligible votes cast for said candidates; that it was therefore impossible to make a determination as to which three of said four candidates were validly elected. Accordingly, Special Term ordered a new election between petitioner and respondents Erickson, Sabbeth and Leslie for the remaining three contested positions. (Special Term held that, since Weisenberg and Miller had many more votes than all the other candidates, they were clear winners, and that the candidates who finished seventh, eighth, ninth and tenth, were clear losers, on the basis of their low total votes.) In our view, this proceeding was properly and timely commenced, since service of the papers pursuant to CPLR 308 (subd 2) was a proper method of service under the term "personal service" in the order to show cause. Pursuant to subdivision 2 of section 330 of the Election Law, the last day on which this proceeding could be instituted was September 19, 1975. On September 18, 1975, one day prior thereto, pursuant to the order to show cause directing "personal service" upon respondents, copies of the order to show cause and the supporting papers were served on respondents Erickson, Sabbeth and Leslie by leaving them with persons of suitable age and discretion at the respective dwelling places of each of these three respondents *and* by mailing copies thereof to said respondents' homes (CPLR 308, subd 2). Since the order to show cause and the supporting papers were timely served on persons of suitable age and discretion at the dwelling place of each of these three respondents, the fact that the copies which were mailed were not received by September 19, 1975 (a fact we assume only for the purpose of argument), was not a jurisdictional defect *(Matter of O'Connor v Power,* 30 AD2d 926, affd 22 NY2d 889). However, we disagree with the holding of Special Term that a new primary election should be held between petitioner and appellants, Erickson, Sabbeth and Leslie. We further hold that no new election is warranted; that the petition should have been dismissed in its entirety, on the merits; and that respondents Weisenberg, Miller, Leslie, Sabbeth and Erickson should have been declared the duly and validly elected nominees for the five offices in question. Turning to the merits of the petition, we direct our attention to the plurality achieved by respondent Erickson over petitioner Weill, i.e., eight votes. Had Erickson and Weill been in a two contestant-race vying for one position, the eight-vote differential vis-à-vis the number of ineligible ballots here present would have enabled petitioner to succeed in an application for a new election (see *Matter of Santucci v Power,* 25 NY2d 897, affg 33 AD2d 517). While at first blush it would appear that petitioner should similarly prevail here, the mathematical principles of probability negate

such a contention. In the situation at bar, 10 persons were running for five positions. Each voter had an opportunity to vote for five candidates. Under these circumstances, the number of possible different combinations of votes was so astronomical as to diminish the impact of the 120 ineligible ballots to a point where petitioner cannot meet her burden of establishing " 'the probability that the result would be changed by a shift in or invalidation of the questioned votes' " *(Matter of De Martini v Power,* 27 NY2d 149, 151). Since petitioner under the facts at bar could not demonstrate a probability that but for the irregularities she would have placed ahead of respondent Erickson, who had eight more votes than she, it is clear a fortiori that petitioner could not meet her burden regarding respondents Sabbeth and Leslie, who had pluralities over her of 41 and 77 votes respectively. Indeed, with the same plurality between petitioner and, respectively, Sabbeth and Leslie, and the same 120 ineligible ballots, petitioner could not have succeeded in securing a new election against either Leslie or Sabbeth even if she had been in a two-contestant race with either of them (see *Matter of De Martini v Power,* 27 NY2d 149, *supra).* Gulotta, P. J., Rabin, Hopkins, Martuscello and Latham, JJ., concur.