ORCHARD PARK CENTRAL SCHOOL DISTRICT, Respondent, v ORCHARD PARK TEACHERS ASSOCIATION et al., Appellants.

Fourth Department, January 16, 1976

*Bernard F. Ashe (Emanuel Tabachnick* of counsel), for appellants.

*Terrance H. McCarville* for respondent.

MOULE, J. Defendants appeal from two orders, one of which temporarily restrained them from conducting a strike against the plaintiff and the other of which held them in contempt of court under section 750 of the Judiciary Law.

The Orchard Park Teachers Association (Association) is the duly authorized collective bargaining agent for the teaching staff (Teachers) of the Orchard Park Central School District (District). In March, 1975, more than three months prior to the expiration of the collective bargaining agreement then in effect between the Association and the District, negotiations were commenced toward the formulation of a new contract. Discussions continued through the summer but agreement was not reached.

The negotiations centered on three issues. The Teachers sought to limit the District's right under certain circumstances to transfer them from one school building to another. They also demanded a just cause dismissal policy during the first six months of employment and a substantial increase in both their base pay and extracurricular activity pay.

The negotiations were still in progress when classes resumed in September and although the Teachers started work

at the beginning of the term, on October 3, 1975 a strike vote was taken. On October 12 a fact finder, who had been called into the dispute, issued a report which was generally more favorable to the District's position than to the Teachers.[1] The Teachers subsequently went on strike on October 14 and only 30 out of 310 reported for work.

By order to show cause dated October 14 the District sought a preliminary injunction and a temporary restraining order prohibiting further strike activities. At that time the court granted the application for the temporary restraining order and made the application for the preliminary injunction returnable the following day. The Teachers Association, eight of its officers and members, John Doe and Mary Roe as striking teachers whose names were not known, and Ronald Uba, a representative of the New York State United Teachers, Inc., were named as defendants. The action was subsequently discontinued as to Uba. On October 16 the District obtained and served another order to show cause returnable October 21, requesting the court to punish the Association and its individual members for contempt.

On October 17, 1975 the Association and the individually named Teachers obtained and served an order to show cause, returnable on October 20, why the temporary restraining order and the complaint upon which it was issued should not be dismissed. The following day the Association also moved for an order vacating the contempt proceeding. On October 24 Special Term issued an order granting plaintiff's application for a preliminary injunction. In it the court directed the Association and the Teachers to refrain from participation in any form of strike or related activity and to return to work forthwith. Nevertheless, attendance records maintained by the District showed no increase whatsoever in the number of Teachers reporting for work following either of the two court directives.

On October 28, after the strike had been in progress for two weeks, a hearing on the contempt charge was held. Following two days of testimony the Association and eight of its individual members were adjudged guilty of criminal contempt. The court found that a strike had been in progress since October 15. The Association was fined $5,000 for its violation of the

---

1. Section 209 of the Civil Service Law provides for the use of a fact finder under the auspices of the Public Employment Relations Board.

temporary restraining order on October 15 and 16 and was directed to pay $1,000 per day for each day its violation of the order continued. Each of the eight individual Teachers was sentenced to 30 days in jail and three of them who had been observed picketing were fined $250 each. On October 30, after the eight individual Teachers had spent several hours in jail, an order was granted staying the enforcement of the contempt adjudication pending determination of this appeal.

Defendants raise 11 points in attacking their convictions. First, defendants maintain that the District's action in seeking a preliminary injunction was illegal because it was not authorized by the Board of Education at a public meeting. Section 211 of the Civil Service Law, a subdivision of article 14 commonly known as the Taylor Law, states that whenever it appears that public employees are either in the process of striking or are about to strike, the chief executive officer of the governmental unit involved, through its chief legal officer, or the chief legal officer alone, shall forthwith apply to the Supreme Court for an injunction prohibiting strike activity. If the persons against whom the injunction is directed do not comply, section 211 of the Civil Service Law further provides that the chief legal officer shall forthwith apply to the Supreme Court to punish the violation under section 750 of the Judiciary Law.

This statute speaks in mandatory terms and is aimed at bringing a speedy end to illegal public employee strikes. To read into it the necessity of approval by the entire school board in the face of the clear directive of section 211 of the Civil Service Law would not only ignore the express language of the statute but render it ineffective. This is especially clear since the statute directs the chief legal officer to proceed on his own in the event that the chief executive officer fails or refuses to notify and provide data to him concerning the Taylor Law violation. Thus, even if the school board had become involved, its action, whether in approval or disapproval of the application for injunctive relief, would have been all but meaningless (*Board of Educ. of City of N.Y. v Shanker*, 54 Misc 2d 941, affd 29 AD2d 634).

Defendants next contend that the District's application for a temporary restraining order and for a temporary injunction was fatally defective because it did not rest upon an underlying application for permanent injunctive relief. They argue that the explicit term "permanent injunction" appears not

once in the District's original complaint. However, an analysis of the complaint reveals that the relief requested was that the Association and its individual members "be enjoined and commanded to refrain from" engaging in any form of strike activity, and in addition that a temporary restraining order and temporary injunction be issued during the pendency of the action. The complaint is entitled to liberal construction and we so construe it (CPLR 3026). Further, any inconsequential irregularity in the pleadings was cured when the court permitted the District to amend its complaint to add the word "permanent" to its prayer for relief (see CPLR 2001).

The third point advanced by the defendants is that section 16 of the General Associations Law prohibits the District from proceeding against the Association and its members in both their individual and derivative capacities. However, section 16 of the General Associations Law is applicable only where the sole liability of the individual defendants arises as a result of membership in the Association (*April v Baird,* 32 App Div 226; *Lubliner v Reinlib,* 184 Misc 472). Here the actions of the individual defendants in participating in the strike gave rise to a basis for liability independent from that which arose out of their membership in the Association. Section 211 of the Civil Service Law expressly provides for injunctive relief against "public employees or an employee organization" for acts in violation of the Taylor Law.

The next contention urged by defendants is that the District's application for injunctive relief should have been dismissed insofar as it named John Doe and Mary Roe as teachers employed by the District, such designation being used to identify persons whose true names were unknown. CPLR 1024 provides that "[a] party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known." The purpose of this section is to permit a cause of action known to exist to be brought against a person whose name only is unknown (*Town of Hancock v First Nat. Bank,* 93 NY 82; *Matthews v Schusheim,* 42 Misc 2d 176). Here the District undoubtedly was aware that a cause of action under section 211 of the Civil Service Law existed against all of the Teachers in the District who had participated in the strike. According to attendance records kept by the District naming all participating teachers would have required joining some

280 persons. This task was impractical in view of the swift action which the Taylor Law contemplates. Furthermore, we note that none of the persons enjoined from striking under the John Doe and Mary Roe designation was actually held in contempt.

The next three points all concern the question of notice to the defendants of the issuance of the order directing them to refrain from striking. Defendants at the contempt hearing did not deny knowledge of the issuance of such order nor do they do so upon this appeal but, rather, they question whether there was sufficient proof of notice presented at the hearing.

Defendants urge that the proof presented was insufficient to show that they received adequate notice of the mandate of the court. In addition, defendants argue that the copies of the order delivered to them were not certified and that, further, in the instance of two defendants, notice was insufficient since it was made by substituted service albeit by court order.

The resolution of each of these issues depends largely upon whether or not there was adequate proof produced at the contempt proceeding to show that the defendants had actual knowledge of the issuance of the restraining order. Actual knowledge of a judgment or order is an indispensible element of a contempt proceeding *(Shakun v Shakun,* 11 AD2d 724; *Matter of Belanoff v Belanoff,* 277 App Div 1056). A party with actual knowledge of a judgment or order may be held in contempt *(Puro v Puro,* 39 AD2d 873, affd 33 NY2d 805; cf. *Present v Aranyi,* 38 AD2d 801). Contempt orders have been upheld against parties for violations of an injunction with knowledge of it even though never served *(People ex rel. Stearns v Marr,* 181 NY 463; *Daly v Amberg,* 126 NY 490). Defendants' contention that they were not aware of the mandate of the court is incredible in view of the widespread publicity this strike received in area newspapers and the daily coverage given the strike by radio and television stations throughout Western New York *(City of New York v De Lury,* 23 NY2d 175, 187).

In any event, affidavits of service upon each of the defendants executed by plaintiff's co-counsel were received in evidence at the hearing at which he was present. As such, they became part of the plaintiff's case and were then prima facie evidence of the truth of the allegations contained therein *(Denning v Lettenty,* 48 Misc 2d 185). Defendants could very easily have called upon the affiant to testify on their behalf.

Finally, when defendants first voiced their objection to the receipt of the affidavits into evidence, the trial court offered each of the defendants an opportunity to deny that service was effected upon him. None did. The key question is thus whether the record as a whole supports the trial court's finding as to knowledge of the restraining order *(Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers,* 42 AD2d 422). We think that it does.

Defendants, in their eighth point, contend that they were deprived of due process since they were not given adequate notice of the specific subdivision of section 750 of the Judiciary Law under which they were charged with contempt; that plaintiff should not have been permitted to amend its pleadings to cover the 15 days that the strike had been in progress on the date of the contempt adjudication when its original papers only covered the first two days; that there was no proof that they had willfully disobeyed a lawful mandate of the court; that defendant Rivers was denied his Fifth Amendment privilege against self-incrimination when required to identify Association records and leaflets for entry into evidence; and that comments by the trial court indicated bias.

We find no merit in any of these contentions. Section 751 of the Judiciary Law provides that a party charged with contempt "must be notified of the accusation, and have a reasonable time to make a defense." What constitutes sufficient notice and reasonable time depends upon the particular circumstances of each case *(Matter of Spector v Allen,* 281 NY 251; see, also, *Taylor v Hayes,* 418 US 488; *Matter of Board of Educ. of Half Hollow Hills Cent. School Dist. v Roseman,* decided Oct. 29, 1975). Here the affidavits attached to plaintiff's complaint specified that defendants were being charged with willful disobedience of a lawful mandate in that they were engaged in an illegal strike. This language corresponds to that of subdivision 3 of section 750 of the Judiciary Law and sufficiently informed defendants of the accusations made against them.

As for defendants' argument that plaintiff should not have been permitted to amend its complaint to include violations of the restraining order on dates subsequent to October 15 and 16, it is apparent that no prejudice resulted therefrom since the court's contempt order only covered the first two days of the strike. In response to defendants' contention that proof was lacking as to their disobedience of the restraining order,

very similar proof to that presented here, under very similar circumstances, has been held sufficient to sustain a contempt conviction *(City of New York v De Lury,* 23 NY2d 175, *supra; Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers,* 42 AD2d 422, *supra).* Furthermore, the testimony of defendant Rivers, president of defendant Association, in no way incriminated him as an individual. The Association itself was the only defendant against whom his identification of the records and leaflets was directed. Finally, as defendants concede, remarks made by the trial court indicating disapproval of defendants' position do not, in themselves, constitute error.

Defendants' last three contentions are all directed at the sentences imposed by the court. They argue that the court's order containing the mandate of commitment was fatally defective in that it failed to set forth the particular circumstances of the offense; that the sentences it imposed were arbitrary and capricious; and that the continuing nature of the fine imposed upon the Association was illegal.

We think that the court's order and mandate of commitment contained therein was replete with specificity and any contention to the contrary is spurious. We also think that the sentences imposed by the court were proper. The sentences imposed upon the individual defendants were the maximum allowable under subdivision 1 of section 751 of the Judiciary Law. The amount of the fine imposed upon the Association is specifically left to the sound discretion of the court under paragraph (a) of subdivision 2 of section 751 of the Judiciary Law. The original order directing defendants to refrain from engaging in strike activities was issued October 14. At the time the contempt order was issued, on October 30, the defendants had continued their strike, in violation of the court's directive, for 16 days. The continuing nature of the violation may be taken into account (Judiciary Law, § 751, subd 2, par [a]; *Matter of Board of Educ. of Half Hollow Hills Cent. School Dist. v Roseman,* decided Oct. 29, 1975, *supra)* and the court may impose a prospective fine for every day that the contempt persists *(Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers, supra).*

Strikes by schoolteachers have become a rather commonplace occurrence in this State with the beginning of nearly every school year, as the growing list of contempt proceedings to which we have looked for guidance in this case will attest. In virtually every instance in which courts have been called

upon to enforce the sanctions of the Taylor Law against striking teachers, substantial penalties have been imposed and guilty parties have been sternly reprimanded *(City School Dist. of City of Schenectady v Schenectady Federation of Teachers,* 49 AD2d 395, app dsmd NY2d, decided Dec. 29, 1975; *Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers, supra; Matter of Board of Educ. of Half Hollow Hills Cent. School Dist. v Roseman, supra; Matter of Board of Educ. v Lakeland Federation of Teachers,* 65 Misc 2d 397; *Board of Educ. of City of N.Y. v Shanker,* 54 Misc 2d 941, affd 29 AD2d 634, *supra).*

The conduct of the striking schoolteachers is reprehensible and is to be condemned because of the position of trust which they occupy in the community. When educated people of whom so much is expected and for whom so high a standard has properly been set put their own self-interest ahead of the interest of children and openly and notoriously defy the statutes of this State and the orders of its courts, they must accept the consequences.

The orders should be affirmed.

MARSH, P. J., MAHONEY, GOLDMAN and WITMER, JJ., concur.

Orders unanimously affirmed, without costs.