OPINION OF THE COURT
Lewis R. Friedman, J.
These cases, consolidated for decision, present several recurring issues concerning the enforcement of court orders obtained by petitioner, the Department of Housing Preservation and Development (DHPD). In each case an order under the Housing Maintenance Code (HMC) (Administrative Code of City of New York § D26-53.01) directed the respondent to provide heat and hot water as required by HMC article 17 (Administrative Code § D26-17.01 et seq.). After the orders were served on respondents, violations for a lack of heat and hot water were placed at each of the premises. Civil and criminal contempt proceedings were commenced by DHPD to remedy the violations of the injunctions and to punish the violators.
The respondents in Arick seek dismissal of the contempt proceeding. The respondents in Chaney seek to vacate the default contempt judgments which were entered. (The respondent Chaney served the entire 30-day jail sentence nine months before this motion was made.) All respondents allege improper service of the orders to show cause which commenced the contempt proceedings.
In both cases the orders to show cause provided, inter alia, for service pursuant to CPLR 308 and 311 and CCA 110 (m). The affidavits of service in Arick show that "Jane” Torres was served as a "general agent” of the corporation and as a "person of suitable age and discretion” on behalf of the individual respondents; additionally, copies were mailed to the addresses registered with DHPD under Administrative Code § D26-41.03. In Chaney service was made by "mail and nail” at the home and business addresses registered with DHPD.
Respondents raise several important issues, not explored in prior cases, concerning the service of process in civil and criminal contempt proceedings. The Court of Appeals, in Matter of McCormick v Axelrod (59 NY2d 574, 582-583 [1983]), recently restated the distinction between civil and criminal contempt. "Civil contempt has as its aim the vindication of a *952 private right of a party to litigation and any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right (State of New York v Unique Ideas, 44 NY2d 345). Criminal contempt, on the other hand, involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates (King v Barnes, 113 NY 476).”
Since different standards of service apply to civil and criminal contempt, they will be discussed separately.
SERVICE OF ORDERS TO SHOW CAUSE TO COMMENCE CIVIL CONTEMPT CASES
The starting ground for analyzing service requirements is the statute involved. Judiciary Law § 761 provides: "An application to punish for contempt in a civil contempt proceeding shall be served upon the accused, unless service upon the attorney for the accused be ordered by the court or judge.” The cases interpreting that section uniformly hold that personal service is not required. That is, the civil contempt proceeding is treated as a motion in the case and any form of service otherwise authorized, including ordinary mail, has been upheld. (See, e.g., Quantum Heating Servs. v Austern, 100 AD2d 843 [2d Dept 1984]; Long Is. Trust Co. v Rosenberg, 82 AD2d 591, 598 [2d Dept 1981].)
The First Department has recently reaffirmed the long line of cases which hold that service of an order to show cause on an attorney for a party to an action is sufficient to initiate a civil contempt proceeding. (Lu v Betancourt, 116 AD2d 492; see, S.I. Realty Holding Corp. v Harris, NYLJ, Feb. 14, 1986, p 13, col 1 [App Term, 1st Dept]; Billingsley v Better Business Bur., 232 App Div 227 [1st Dept 1931]; cf. New York Higher Educ. Assistance Corp. v Cooper, 65 AD2d 906 [3d Dept 1978]; Long Is. Trust Co. v Rosenberg, supra; compare, Federal Deposit Ins. Corp. v Richman, 98 AD2d 790, 792 [2d Dept 1983] [contemnor was not a party to an underlying action].)
The Second Department has noted that the 1977 amendments to the Judiciary Law use the term "personal service” in sections 772 and 773, which govern punishment for contempts committed by violating enforcement proceedings under the CPLR and Domestic Relations Law, but not in section 761, which governs the service of the order to show cause to commence a civil contempt proceeding. (New York Higher Educ. Assistance Corp. v Cooper, supra.)
*953 The cases lead to the conclusion that the order to show cause may be validly served on the alleged contemnor, either personally if not a party to the action or by mail if a party, or on counsel who has appeared in the action.
SERVICE OF ORDERS TO SHOW CAUSE TO COMMENCE CRIMINAL CONTEMPT CASES
The rule oft stated in this State is that service of the order to show cause to commence a criminal contempt proceeding must be personally served on the accused. This rule exists despite the statutory requirement as to service. Judiciary Law § 751 (1) provides merely that "the party charged must be notified of the accusation, and have a reasonable time to make a defense.” Yet the Court of Appeals has long seemed to require personal service on the accused. "[P]ersonal service in such cases is indispensable and this is based 'on the well settled principle of the common law, that no person shall be condemned unheard.’ ” (Billingsley v Better Business Bur., supra, pp 227, 228, quoting from Pitt v Davison, 37 NY 235 [1867].)
All of the subsequent cases in the First and Second Departments appear to use the same formulation — "personal service” (see, e.g., Long Is. Trust Co. v Rosenberg, supra; Lu v Betancourt, supra; S.I. Realty Holding Corp. v Harris, supra; James v Powell, 32 AD2d 517 [1st Dept 1969]; People v Balt, 34 AD2d 932 [1st Dept 1970]; Matter of Murray, 98 AD2d 93, 98 [1st Dept 1983]; State Univ. v Denton, 35 AD2d 176, 179-180 [4th Dept 1970]; Board of Educ. v Pisa, 54 AD2d 821 [4th Dept 1976]). The Third and Fourth Departments, at least in some cases, do not appear to require "personal service”, but analyze the adequacy of the notice in the particular case. (Compare, City School Dist. v Schenectady Fedn. of Teachers, 49 AD2d 395, 398 [3d Dept 1975]; Orchard Park Cent. School Dist. v Orchard Park Teachers Assn., 50 AD2d 462, 469 [4th Dept 1976] with Board of Educ. v Pisa, 54 AD2d 821 [4th Dept 1976], supra.) In any event, none of the reported contempt decisions defines "personal service”.
All of the respondents before the court argue that the term "personal service” in contempt cases means "personal delivery”. That is, they contend that the appellate courts have insisted on "in hand service” of the order to show cause in order to commence a criminal contempt case. The argument, notwithstanding the number of times it is repeated, is incor *954 rect in light of the statutes, the actual holdings of the cases and the public policy involved.
There is a statutory definition of "personal service”. CPLR 308 explains how "personal service” upon a natural person is made. That section provides for five methods of "personal service” — "personal delivery”, "substituted service”, service on a designated agent, "mail and nail” and the varied forms of service under CPLR 308 (5).
The cases interpreting CPLR 308 uniformly hold that "personal service” is more inclusive than "personal delivery” (see, e.g., Rogers v Rogers, 32 AD2d 558 [2d Dept 1969]; Wakerman Leather Co. v Foster Sportswear Co., 27 AD2d 767 [3d Dept 1967]; Matter of Weill v Erickson, 49 AD2d 895, 897 [2d Dept 1975], affd 37 NY2d 851 [1975]). "Personal delivery” is used in CPLR 308 (1) to mean "in hand delivery”. The same use is intended in CPLR 317 where defaults can be vacated in certain cases where there has not been "personal delivery” (cf. Wakerman Leather Co. v Foster Sportswear Co., supra; see, Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., 67 NY2d 138). Similarly RPAPL 771 (5) (a) distinguishes between "personal delivery” and other forms of service for the commencement of proceedings for the appointment of an administrator. (Compare, Administrative Code former § D26-50.9, which required service "in person” to commence certain actions; Housing & Dev. Admin. v Hickman, 68 Misc 2d 701, 702-703 [Civ Ct, NY County 1971].)
The cases hold that when no form of service is specified only "personal delivery” is intended. (See, e.g., Twentieth Century-Fox Film Corp. v Dupper, 33 AD2d 682 [1st Dept 1969]; Stevens v State of New York, 277 App Div 418, 420 [3d Dept 1950]; cf. Rathbun v Acker, 18 Barb 393.) But that principle should not apply when "personal service” is specified, by statute or case law.
Statutory analysis is supported by the contempt cases, for the reported cases do not require "personal delivery” of the order to show cause. A review of the cases starting with Pitt v Davison (supra) show that the courts have not addressed the issue. Indeed, in Pitt the proceeding was actually a civil contempt proceeding so that the entire discussion of criminal contempt was obiter dictum. It appears that the appellate courts’ failure to disclose what form of service has been held to be inadequate has confused the issue and led some courts to an incorrect result (e.g., State of New York v International *955 Conference of Police Assns., 98 Misc 2d 1052 [Sup Ct, NY County 1978]).
This court has analyzed the decisions which have discussed service and has read the records on appeal in the reported cases in order to determine what forms of service were held to be inadequate. That research reveals that there are certain forms of service which have been held inadequate by the appellate courts; substituted service and "mail and nail” are not on that list.
There is a series of cases where service was made on the attorney for the party. In each of the cases the service was held to be inadequate. For example, in Billingsley v Better Business Bur. (supra), the contemnor was evading service and service was made on counsel; in Lu v Betancourt (supra), and S.I. Realty Holding Corp. v Harris (supra), service was made on counsel who had appeared in the original action. In James v Powell (supra), the opinion and record on appeal fail to disclose the manner of service of the order to show cause.
In another series of cases service was made on persons who did not have a direct connection with the contemnor. For example, in People v Balt (supra), relied upon in Lu v Betancourt (supra), service was made on the law office of an attorney for whom Balt had rendered legal services on a referral basis; in Matter of Murray (supra), also relied upon in Lu v Betancourt, service on the commissioner contemnor was made by leaving copies in the Family Court Clerk’s office to be picked up by the commissioner’s staff.
CPLR 403 (c) provides that the service of the order to show cause or notice of petition which commences a special proceeding is made "in the same manner as a summons in an action”. Service on counsel alone is inadequate. (Compare, CPLR 403 (d); Board of Educ. v Zeluck, 60 Misc 2d 1090, 1093 [Sup Ct, Westchester County 1969]; Matter of Kay v Arn, 29 AD2d 937 [1st Dept 1968]; cf. Matter of State-Wide Ins. Co. [Lopez], 30 AD2d 694 [2d Dept 1968].) Although some courts have held that "personal delivery” is required to commence a criminal proceeding (People v Turkel, 130 Misc 2d 47 [Crim Ct, NY County]), that result is not necessarily correct. (Compare, People v Byfield, 131 Misc 2d 884 [Crim Ct, NY County 1986].)
In short, the cases support the conclusion that a form of service that does not comply with the requisites for acquiring jurisdiction over a person for the commencement of a special proceeding will be insufficient for the commencement of a *956 contempt proceeding. (See, e.g., People ex rel. Negus v Dwyer, 90 NY 402 [1882]; People ex rel. Stearns v Marr, 181 NY 463 [1905]; Matter of Douglas v Adel, 269 NY 144 [1935].) Conversely, if service would support an independent special proceeding then it will support a criminal contempt proceeding. (See, Long Is. Trust Co. v Rosenberg, 82 AD2d, at p 592; Federal Deposit Ins. Corp. v Richman, 98 AD2d, at p 792.)
That result comports with the public policy at issue in contempt cases. An alleged contemnor who may be punished for criminal contempt must be given a notice of the proceeding and an opportunity to be heard. A person may not, however, violate court orders with impunity. If "personal delivery” were required, it would be fairly easy for a person who is disobeying a court order to continue to flaunt the courts by trying to avoid service. (See, Silverstein v Diaz, 124 Misc 2d 597 [Civ Ct, Queens County 1984]; Frey v Sipos, NYLJ, June 20, 1985, p 12, col 5 [App Term, 2d Dept].) The Court of Appeals has recently noted that those who avoid service may be validly served anyway. (Bossuk v Steinberg, 58 NY2d 916, 918-919 [1983].) "It is hornbook law that a constitutionally proper method of effecting substituted service need not guarantee that in all cases the defendant will in fact receive actual notice (Dobkin v Chapman, 21 NY2d 490, 502). It suffices that the prescribed method is one 'reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pendency of the action’ (Mullane v Central Hanover Trust Co., 339 US 306, 314).” Each of the forms of "personal service” described in CPLR 308 meets those tests.
Respondents in Arick argue that service pursuant to CCA 110 (m), as authorized by the order to show cause here, should not be permitted. In essence the various subdivisions of section 110 (m) provide for service at the address registered with DHPD under HMC article 41 in lieu of service at "the actual place of business” or the "last known residence” required by CPLR 308. Section 110 (m) does not literally apply to contempt cases: "The service of process in any of the actions or proceedings specified in subdivision (a) which are brought under the housing maintenance code of the administrative code of the city of New York shall be made as herein provided”. Contempt proceedings are not listed in section 110 (a). But the inquiry does not end with a facial analysis of the statute.
The registration requirements of the HMC were created for the purpose of notifying tenants and governmental officials of *957 the persons responsible for the operations of a multiple dwelling. The registered managing agent is required to be available at the registered address. Registration, among its other goals, makes service "by tenants and governmental agencies relatively simple and inexpensive. These are valid governmental goals. Indeed, the goals of easy service were a major reason for the Legislature’s decision in 1968 to enact Multiple Dwelling Law § 325 (2) which prevents the collection of rent while there is no effective registration.” (Amsterdam v Goldstick, 128 Misc 2d 374, 376 [Civ Ct, NY County 1985].) A managing agent and owner who complies with the law and keeps the registration current will always receive governmental notices; those who do not have only themselves to blame. Such a procedure is constitutionally valid.
In Dobkin v Chapman (21 NY2d 490, 503 [1968]), the Court of Appeals considered four factors in determining a "due process” balance. "In the cases before us, the plaintiff’s need, the public interest, the reasonableness of the plaintiff’s efforts under all the circumstances to inform the defendant, and the availability of other safeguards for the defendant’s interests are compellingly present.” The need of the petitioner here, DHPD, to enforce the HMC, the public interest in preventing the withholding of services essential to the life and health of the tenants, the reasonableness of the efforts which the affidavits of service reveal were made to notify the respondents, and the availability of procedural safeguards for the respondent’s interests are all "compellingly present” here. The owner can always update the file in order to insure that notices are properly received.
The registration of the home and business addresses should reasonably estop the owner from denying that service was made "at the actual place of business, dwelling place or usual place of abode” or "last known residence” as those terms are used in CPLR 308. (See, e.g., Silverstein v Diaz, supra; Department of Hous. Preservation & Dev. v Lopez, NYLJ, Aug. 17, 1983, p 13, col 4 [Civ Ct, Bronx County].) This estoppel is consistent with the line of cases that estop a motorist from denying the validity of service at the address registered with the Department of Motor Vehicles (e.g., Cohen v Arista Truck Renting Corp., 70 Misc 2d 729 [Sup Ct, Nassau County 1972]; Gintzler v Schwarz, 126 Misc 2d 491 [Sup Ct, NY County]; Walker v Little, NYLJ, Nov. 27, 1985, p 13, col 4 [Sup Ct, Kings County]).
In short, respondent, who registered the addresses, should *958 not now be permitted to deny that the address served is the proper place.
CONCLUSION
There is no basis for the motion by the respondents in Arick to dismiss the proceeding. The service of the order to show cause was clearly adequate to establish jurisdiction over the corporate respondent in the contempt proceedings. (CPLR 311.) The service on the individual respondent was also adequate.
In Chaney the default judgment for criminal contempt should stand. There is no defect in the manner of service; the court, therefore, had jurisdiction over the respondent. Additionally, the judgment should not be set aside under CPLR 317. Even though Chaney was not served by "personal delivery”, he does not set forth a sufficient defense "going to the merits” which would warrant setting aside the judgment. (See, Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., supra.)
There are conflicting arguments whether the provisions in the order which was disobeyed, which make each day during which there was no heat or hot water a separate contempt, would authorize a separate civil contempt fine. However, in light of the holdings in S.I. Realty Holding Corp. v Harris (supra) and State of New York v Unique Ideas (44 AD2d 345, 349-350 [1978]), it would be appropriate, in the exercise of discretion, to reduce the civil contempt fine in Chaney to $250.