In the Matter of MICHAEL GARRETT, as Director of In-Patient Psychiatry at North Central Bronx Hospital, Petitioner. NOEL N., Respondent.

Supreme Court, Bronx County, February 26, 1989

**APPEARANCES OF COUNSEL**

*McAloon, Friedman & Mandell, P. C.,* and *Salzman & Jaffe, P. C. (Ira Salzman* of counsel), for petitioner. *Michael Genkin, Wendy Hodor* and *Ronald N. Gottlieb* for respondent.

**OPINION OF THE COURT**

LEWIS R. FRIEDMAN, J.

Petitioner, the director of in-patient psychiatry at North Central Bronx Hospital, brought this proceeding pursuant to *Rivers v Katz* (67 NY2d 485) seeking authorization for the administration of antipsychotic medication to a psychiatric inpatient against his will. The proceeding was commenced by an order to show cause which directed that service be made on the patient and the Mental Hygiene Legal Service (MHLS) by "personal service" and on named relatives by certified mail.

This opinion is an expansion of the oral decision rendered during the hearing in this case. The Court of Appeals set no guidelines for service of applications under *Rivers v Katz (supra).* The method of serving papers to commence this type of proceeding is of vital importance in the area of judicial involvement in the compelled administration of therapeutic "psychoactive" drugs.

The scheduled hearing was held in the patient's ward at petitioner's hospital. Dr. Paul Jayson, the patient's attending physician, who signed an affidavit of facts in support of the petition, testified for petitioner. During the hearing, at which the patient was represented by MHLS, the patient maintained that he had not received any papers notifying him of the hearing.

The affidavit of service disclosed that "personal service" was made as follows: "By delivering a true copy to 'Noel N.' the respondent personally. Accepted for patient and placed in patient's chart by Dr. Paul Jayson." Dr. Jayson told the court that the affidavit was accurate and that the papers in proceedings for compulsory medication "were usually handled" in that fashion.

The service here is antithetical to the rationale for proceedings under *Rivers v Katz (supra).* The Court of Appeals decision forcefully imposed an independent judicial evaluation on the medical profession's attempt to compel a mental patient to take antipsychotic drugs. The petitioner has "the burden of demonstrating by clear and convincing evidence the patient's incapacity to make a treatment decision" (67 NY2d, *supra,* at 497). "[I]t is clear that neither mental illness nor institutionalization per se can stand as justification for overriding an individual's fundamental right to refuse antipsychotic medication on either police power or *parens patriae* grounds" (67 NY2d, *supra,* at 498). The Court of Appeals also noted that serious side effects, some of them irreversible, may follow administration of the " 'major tranquilizers' " or " 'neuroleptics' " which are involved (67 NY2d, *supra,* at 490, n 1; *see, Davis v Hubbard,* 506 F Supp 915, 928-929). "[T]he court must determine whether the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest, taking into consideration all relevant circumstances, including the patient's best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment and any less intrusive alternative

treatments" (67 NY2d, *supra,* at 497-498; *Matter of Eleanor R. v South Oaks Hosp.,* 123 AD2d 460). Thus, in a proceeding to permit compulsory administration of antipsychotic medication, it is vital that the patient have actual notice of the proceeding and the relief sought by petitioner, including the proposed treatment plan.

Service was improper.

This is a special proceeding governed by CPLR article 4. Normally, a petition "shall be served in the same manner as a summons" (CPLR 403 [c]) unless the court directs another means of service in an order to show cause (CPLR 403 [d]).

The term "personal service" in an order to show cause, in contexts such as contempt proceedings, has been held to mean any form of service authorized by CPLR 308 *(Department of Hous. Preservation & Dev. v 24 W. 132 Equities,* 137 Misc 2d 459 [App Term, 1st Dept]; *Department of Hous. Preservation & Dev. v Arick,* 131 Misc 2d 950). However, in a proceeding such as the one at bar, it is crucial that the patient actually be advised of the proceeding. Since the patient is an inpatient at petitioner's hospital, "personal delivery" is presumptively possible, without difficulty. At the hearing it was conceded there was no "personal delivery" to the patient here (CPLR 308 [1]).

It was argued that there was delivery to a "person of suitable age and discretion" (CPLR 308 [2]). However, it is Kafkaesque for the hospital to suggest that the treating physician who commenced the proceeding for forcible medication can be of "suitable * * * discretion" to be served with his own application. Of course, the placing of the papers in the patient's hospital chart provides no notice to him at all. Concededly there was no mailing that complied with CPLR 308 (2).

In view of the consequences to the patient of enforced medication, this court holds that, absent extraordinary circumstances, failure to make "personal delivery" of papers commencing a proceeding under *Rivers v Katz (supra)* is fatal. Any other form of service might well raise grave doubts as to the constitutionality of the procedure *(see, Fuentes v Shevin,* 407 US 67, 80; *Matter of McCann v Scaduto,* 71 NY2d 164, 172). The proceeding is dismissed for lack of jurisdiction over the patient.