OPINION OF THE COURT
Per Curiam.
Order entered August 14, 1986 affirmed, with $10 costs.
The underlying proceedings, brought by petitioner Department of Housing Preservation and Development (HPD) for heat and hot water violations at building premises allegedly owned or controlled by respondent Morfesis, resulted in the entry of default judgments which imposed civil penalties and directed respondent to provide essential services as required by law. No motion was made to vacate those defaults. Subsequently, petitioner moved to hold respondent in civil and criminal contempt because of the continued absence of adequate heat and hot water at the buildings involved. The order to show cause, permitting service under CPLR 308, was not personally delivered to respondent (CPLR 308 [1]), but rather was left with a person of suitable age and discretion at respondent’s business office and mailed to his last known residence as registered with HPD (CPLR 308 [2]). After a hearing on the contempt applications (at which respondent was represented by counsel), the Housing Court determined that the conditions in the subject premises were "absolutely deplorable” and that there was "no doubt whatever” that respondent’s acts in failing to provide heat or hot water were willful. Accordingly, respondent was adjudged in civil and criminal contempt and, on the latter, sentenced to a jail term of 30 days.
Our review of the testimony taken from tenants and HPD inspectors regarding conditions at the buildings satisfies us that petitioner established beyond a reasonable doubt that respondent was guilty of willful and deliberate disobedience of the court’s underlying mandates. The principal issue raised here is that the jurisdiction requisite to support a criminal contempt conviction was not obtained. Respondent argues that inasmuch as a criminal contempt proceeding is essentially a criminal prosecution in all material respects, the contemnor is entitled to the process due any criminal defendant, i.e., personal and actual notice of the charges against him. In respondent’s view, service of the order to show cause bringing on the contempt application must be by personal, in-hand delivery, and a petitioner may not resort to the other alternatives *461 specified in the CPLR which confer jurisdiction in a civil action.
It is well settled that a proceeding to punish for a criminal contempt of court arising out of or during the trial of a civil action commences a special proceeding which is separate and distinct from the original action (Board of Educ. v Pisa, 54 AD2d 821; Matter of Murray, 98 AD2d 93). Hence, jurisdiction must be acquired anew. But, contrary to respondent’s argument, the separate proceeding to punish for a criminal contempt has been traditionally viewed in New York as a civil special proceeding (Matter of Douglas v Adel, 269 NY 144, 146), notwithstanding the necessity that the accused be shown to have violated the underlying order with a higher degree of willfulness than is required in a civil contempt proceeding.* **§In consequence, the rules of civil rather than criminal procedure should govern the origination of the criminal contempt application (Siegel, NY Prac § 484, at 650).
As previously observed by Judge Friedman in his extensive analysis of the subject (see, Department of Hous. Preservation & Dev. v Arick, 131 Misc 2d 950), while the cases uniformly utilize the term "personal service” as a jurisdictional predicate for criminal contempt (e.g., Lu v Bentancourt, 116 AD2d 492; Matter of Murray, 98 AD2d 93, 98, supra; People v Balt, 34 AD2d 932), there is no appellate case expressly holding that personal delivery of the order to show cause is the only permissible means of commencing a criminal contempt proceeding, or holding that statutory alternatives to in-hand delivery are jurisdictionally infirm (but cf., State of New York v International Conference of Police Assns., 98 Misc 2d 1052). Many of the cases in which service has not been upheld involved situations where service was made only upon the contemnor’s attorney or others unconnected with the contemnor (Department of Hous. Preservation & Dev. v Arick, supra, at 955, and cases cited therein). Here, personal service upon respondent was effected in compliance with the "leave and mail” provision of CPLR 308. Personal delivery of process, as *462 a heightened form of notice, is of course always preferable, but due process does not require it in special proceedings such as this one so long as the party charged is notified of the accusation and is afforded a reasonable time to defend (Judiciary Law § 751 [1]; Cooke v United States, 267 US 517, 537). In the particular context of contempts not committed in the immediate presence of the court, it is frequently the case that those who have flagrantly violated the court’s orders are not disposed to make themselves readily available for personal delivery of notice that they are to be prosecuted for contempt of those orders. The method of service employed in this proceeding, one of the methods delineated in the statute governing service in civil actions generally, was one reasonably calculated under all the circumstances to apprise respondent of the pendency of the action (see, Mullane v Central Hanover Trust Co., 339 US 306, 314). Jurisdiction over the respondent’s person was, therefore, lawfully obtained.
The designated Housing Judges who preside in the Housing Part of Civil Court are officers of that court and are expressly authorized by statute to punish for contempts in the same manner as Civil Court Judges (CCA 110 [e]; see also, Judiciary Law § 757). In light of the Housing Part’s expansive jurisdiction over proceedings to enforce proper housing standards (CCA 110 [c]), and the unrestricted conferral of the contempt power upon the specialized Judges of that part, it is fair to conclude that the Legislature intended for those Judges to adjudicate both civil and criminal contempt applications arising out of the civil proceedings commenced in the part.
Sandifer, J. P., Parness and Ostrau, JJ., concur.

 It is true that insofar as "serious” criminal contempts are concerned, where the contemnor is subject to extended incarceration, constitutional provisions mandating a jury trial in criminal prosecutions are implicated (Bloom v Illinois, 391 US 194). However, the criminal contempt statute in New York provides for a maximum jail term of 30 days (Judiciary Law § 751 [1]), a contempt which would be considered "petty” under Bloom, and which does not implicate the constitutional guarantees otherwise applicable to the trial of serious crimes.