961 F.2d 390
 22 Fed.R.Serv.3d 313
 NEW YORK STATE NATIONAL ORGANIZATION FOR WOMEN; New York
City Chapter of the National Organization for Women;
National Organization for Women; Religious Coalition for
Abortion Rights--New York Metropolitan Area; New York State
National Abortion Rights Action League; Planned Parenthood
of New York City, Inc.; Eastern Women's Center, Inc.;
Planned Parenthood Clinic (Bronx); Planned Parenthood
Clinic (Brooklyn); Planned Parenthood Margaret Sanger
Clinic (Manhattan); Ob-Gyn Pavilion; the Center for
Reproductive and Sexual Health; VIP Medical Associates;
Bill Baird Institute (Suffolk); Bill Baird Institute
(Nassau); Dr. Thomas J. Mullin; Bill Baird; Reverend
Beatrice Blair; Rabbi Dennis Math; Reverend Donald Morlan;
Pro-Choice Coalition, Plaintiffs-Appellees,
and
The City of New York, Intervenor-Appellee,
and
United States of America, Creditor-Appellee,
v.
Randall A. TERRY; Operation Rescue; Reverend James P.
Lisante; Thomas Herlihy; John Doe(s); Jane Doe(s), the
last two being fictitious Names, the real names of said
defendants being presently unknown to plaintiffs, said
fictitious names being intended to designate organizations
or persons who are members of defendant organizations, and
others acting in concert with any of the defendants who are
engaging in, or intend to engage in, the conduct complained
of herein, Defendants,
Randall A. Terry; Operation Rescue; and Thomas Herlihy,
Defendants-Appellants,
Bernard Nathanson, Respondent,
Jesse Lee; Joseph Foreman; Michael McMonagle; Jeff White;
Florence Talluto; Michael LaPenna; Adelle Nathanson;
Reverend Robert Pearson; Bistate Operation Rescue Network;
and Christopher Slattery, Respondents-Appellants,
A. Lawrence Washburn, Jr., Counsel-Appellant.
 Nos. 1427, 1552, 1553, Dockets 90-6187, 91-6011, 91-6029.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1991.
Decided April 13, 1992.
 
 Joseph P. Secola, New Milford, Conn. (A. Lawrence Washburn, Jr., New York City, of counsel), for defendants-appellants, respondents-appellants (other than Christopher Slattery), and counsel-appellant.
 Mary M. Gundrum, Center for Constitutional Rights, New York City (Alison Wetherfield, Ruth Jones, NOW Legal Defense & Education Fund, of counsel), for plaintiffs-appellees.
 William P. Harrington, White Plains, N.Y. (Bleakley, Platt & Schmidt, of counsel), for respondent-appellant Christopher Slattery.
 Gail P. Rubin, Asst. Corp. Counsel of the City of New York, New York City (Victor A. Kovner, Corp. Counsel of the City of New York, of counsel), for intervenor-appellee City of New York.
 Nancy Kilson, Asst. U.S. Atty. for the Southern District of New York, New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, of counsel), for creditor-appellee U.S.
 Before: KEARSE, MAHONEY, and SNEED,* Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Defendants-appellants and respondents-appellants (other than Christopher Slattery) appeal[1] from an order entered May 10, 1990, and a final amended order entered July 9, 1990, of the United States District Court for the Southern District of New York, Robert J. Ward, Judge, that (1) adjudged them in civil contempt of orders and a permanent injunction previously entered by that court, (2) assessed contempt penalties against them in amounts ranging from $25,000 to $100,000, and (3) assessed attorneys' fees and costs against them in amounts ranging from $3,190.02 to $157,505.81. Respondent-appellant Christopher Slattery appeals[2] from an order and judgment of that court entered December 26, 1990 that adjudged him in contempt of a preliminary injunction and a permanent injunction previously entered by that court, assessed a $50,000 contempt penalty against him, and stayed execution of judgment as to $25,000 on condition that Slattery commit no further violations of the injunctions. Counsel-appellant A. Lawrence Washburn, Jr. appeals from an amended final order of that court entered July 9, 1990 that assessed a sanction against him, pursuant to Fed.R.Civ.P. 11, in the amount of $11,712.47.
 
 
 2
 The appealed rulings are premised upon two published opinions, New York State National Organization for Women v. Terry, 732 F.Supp. 388 (S.D.N.Y.1990), and New York State National Organization for Women v. Terry, 737 F.Supp. 1350 (S.D.N.Y.1990), and (as to respondent-appellant Christopher Slattery) an unpublished oral bench decision.
 
 
 3
 We reverse as to respondents-appellants Florence Talluto and Michael LaPenna and counsel-appellant; we otherwise affirm.
 
 Background
 
 4
 Plaintiffs-appellees are organizations that favor legalized abortion, health clinics that perform abortions, a doctor who performs abortions, and three religious leaders. Defendants-appellants are three individuals, Randall A. Terry, Reverend James P. Lisante, and Thomas Herlihy, and an organization, Operation Rescue, opposed to legalized abortion. Plaintiffs also "named as defendants 'John Does' and 'Jane Does,' intended to designate organizations or persons who are members of defendant organizations, and others acting in concert with any of the defendants who are engaging in, or intend to engage in, the conduct complained of." New York State Nat'l Org. for Women v. Terry, 697 F.Supp. 1324, 1327 n. 2 (S.D.N.Y.1988). That conduct is the prevention of access to facilities in the New York City area performing abortions.
 
 
 5
 In New York State National Organization for Women v. Terry, 886 F.2d 1339, 1357-64 (2d Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990) ("Terry I "), we affirmed a permanent injunction entered by the district court on January 10, 1989 against defendants' efforts to block access to abortion clinics in certain New York State counties because we concluded that those attempts violated 42 U.S.C. § 1985(3) (1988), as well as state trespass and public nuisance law. (The injunction provides for prospective civil contempt penalties of $25,000 per day for its violation, and each successive violation results in doubling of the sanction applicable to the contemnor. See New York State Nat'l Org. for Women v. Terry, 704 F.Supp. 1247, 1263-64 (S.D.N.Y.1989)). We also affirmed an earlier ruling entered October 27, 1988, see New York State Nat'l Org. for Women v. Terry, 697 F.Supp. 1324 (S.D.N.Y.1988), in which the district court held, inter alia, that: (1) defendants Terry and Operation Rescue were in contempt of that court's May 4 temporary injunction,[3] which also provided for $25,000 per day sanctions, and imposed contempt sanctions of $25,000 against each of them; and (2) discovery sanctions pursuant to Fed.R.Civ.P. 37(a)(4) would be imposed against defendants. See Terry I, 886 F.2d at 1350-57. We modified the district court's ruling, however, by directing that the contempt sanctions be paid to the court, rather than to plaintiff-appellee New York State National Organization for Women ("N.O.W."), which had provided "no evidence of actual injury [to N.O.W.] due to Operation Rescue's activities." 886 F.2d at 1354.
 
 
 6
 The district court's October 27, 1988 contempt ruling was "without prejudice to plaintiffs' right to proceed against defendants Herlihy and Lisante, or against any other individuals who violated the Court's Order with notice." New York State Nat'l Org. for Women v. Terry, 697 F.Supp. at 1338. Plaintiffs have since initiated contempt proceedings against various alleged participants in Operation Rescue's activities. See New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 392-93. The demonstrators against whom plaintiffs sought contempt sanctions are the following organizations and persons: defendants-appellants Operation Rescue, Terry and Herlihy; respondent Bernard Nathanson; and respondents-appellants Bistate Operation Rescue Network ("B.O.R.N."), Jesse Lee, Joseph Foreman, Michael McMonagle, Jeff White, Florence Talluto, Michael LaPenna, Adelle Nathanson, Reverend Robert Pearson, and Christopher Slattery. See id. at 396 & n. 2.
 
 
 7
 Plaintiffs-appellees' contempt application relates to four days of demonstrations at various facilities performing abortions: May 6, 1988, October 29, 1988, January 13, 1989, and January 14, 1989. See id. at 398. On all these dates, Operation Rescue members held demonstrations at which they blocked access to abortion facilities. See id. at 394-95. At the May 6, 1988 demonstration, the terms of the May 4, 1988 temporary injunction were read aloud by the New York City police before arrests began. See id. at 394. Similarly, on January 13 and 14, 1989, police officers read the applicable permanent injunction to the demonstrators before initiating arrests. See id. at 395.
 
 
 8
 The district court found, with respect to defendants-appellants, that "all of the demonstrations at issue in these contempt proceedings were initiated and coordinated by Operation Rescue," id. at 398-99; Terry led the demonstrations, engaging in "purposeful conduct designed to violate the Court's orders," id. at 399; and Herlihy participated in the May 6 demonstration with notice of the district court's order against him. See id. The district court: (1) adjudged Terry and Operation Rescue to be in civil contempt of its October 27, 1988 order and permanent injunction, and assessed penalties in the amount of $100,000 against each of them; and (2) adjudged Herlihy to be in civil contempt of its May 4, 1988 order, and assessed a penalty in the amount of $25,000 against him. See id. at 413.
 
 
 9
 Contempt penalties were also assessed against respondents-appellants on the basis that "civil contempt sanctions may be assessed against nonparties who had actual notice of the [court's] orders in effect at the time in question and participated with defendants in violating those orders." Id. at 399-400. See Fed.R.Civ.P. 65(d) (order granting injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise"). After addressing and rejecting most of respondents' arguments against the imposition of contempt sanctions, see 732 F.Supp. at 399-409, the district court found respondents-appellants in contempt of various of the court's orders and assessed contempt penalties against them, as set forth in the margin.[4] The district court further ruled that: "Each of the contemnors is liable to plaintiffs for a pro rata share of the attorneys' fees and costs incurred by plaintiffs as a result of bringing the contempt motion against him or her." 732 F.Supp. at 414. Finally, the district court granted plaintiffs-appellees' motion for the imposition of a Rule 11 sanction upon attorney A. Lawrence Washburn, concluding that "Washburn is liable to plaintiffs for the attorneys' fees and costs they incurred as a result of filing their motion for sanctions and responding to his renewed cross-motion to dismiss." Id.
 
 
 10
 Subsequent to these rulings, the district court issued another opinion addressing plaintiffs' applications for attorneys' fees and costs incurred as a result of: (1) litigating the main action,[5] (2) bringing the contempt proceedings, and (3) Washburn's violation of Rule 11. See New York State Nat'l Org. for Women v. Terry, 737 F.Supp. 1350 (S.D.N.Y.1990). The district court granted all these applications, but reduced the dollar amounts from those sought by plaintiffs-appellees (except as to the Rule 11 sanction against Washburn, which application was granted in full). See id. at 1358-67. Defendants-appellants were adjudged liable for attorneys' fees and costs pursuant to § 1988 in the amount of $157,505.81; contemnors (including defendants-appellants) were assessed fees and costs in the total amount of $83,000.69. Rule 11 sanctions were assessed against Washburn in the amount of $11,712.47. See id. at 1367.
 
 
 11
 This appeal followed. See supra notes 1 and 2.
 
 Discussion
 
 12
 A. The Merits and Terry I.
 
 
 13
 Appellants devote the bulk of their appeal to a reargument of issues that this court decided in Terry I. They contend that women are not a valid "class of persons" for purposes of 42 U.S.C. § 1985(3);[6] we held to the contrary in Terry I. See 886 F.2d at 1358-59. They argue that even if women are a valid class, appellants' actions directed at the prevention of abortions did not amount to the class-based animus required for a violation of § 1985(3); we ruled to the contrary in Terry I. See id. at 1359-60. They argue that they did not violate any constitutional right to travel of persons seeking abortions; we held to the contrary in Terry I. See id. at 1360-61. They argue that the contempt fines imposed by the district court were criminal, rather than civil, in nature, and that appellants were not accorded procedural protections required in criminal contempt proceedings; we ruled to the contrary in Terry I. See id. at 1350-51. These issues are therefore settled in this circuit, absent reconsideration in banc or a different ruling by the Supreme Court. See, e.g., Leecan v. Lopes, 893 F.2d 1434, 1443 (2d Cir.), cert. denied, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990).
 
 
 14
 In addition, our determinations in Terry I constitute the law of the case. This doctrine requires that we "adhere[ ] 'to [our] own decision at an earlier stage of the litigation' unless there are 'cogent' or 'compelling' reasons not to, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " Sanders v. Sullivan, 900 F.2d 601, 605 (2d Cir.1990) (quoting Doe v. New York City Dep't of Social Servs., 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)). No such reason is presented here, at least at this juncture in the litigation.
 
 
 15
 We note in this regard that the Supreme Court has granted certiorari and heard oral argument in National Organization for Women v. Operation Rescue, 914 F.2d 582 (4th Cir.1990) (per curiam), cert. granted sub nom. Bray v. Alexandria Women's Health Clinic, --- U.S. ----, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991). In that case, the Fourth Circuit explicitly invoked Terry I for the proposition that "blocking access to medical services provided by abortion facilities which serve an interstate clientele violates the constitutional right to travel." 914 F.2d at 585. Even if the Supreme Court were to reverse the Fourth Circuit in Bray, however, it is unlikely that appellants could benefit from that ruling in this case.
 
 
 16
 The underlying injunctive orders pursuant to which contempt proceedings were brought against appellants were premised not only upon § 1985(3), but also upon the independent state law grounds of trespass and public nuisance. See Terry I, 886 F.2d at 1361-62. (It is noteworthy in this regard that plaintiffs-appellees initiated this action in state court, and defendants-appellants removed it to federal court. See supra note 3.) Accordingly, the district court's actions can be sustained on these state grounds, which have not been separately challenged on this appeal, so long as the federal claim asserted by plaintiffs-appellees "ha[s] substance sufficient to confer subject matter jurisdiction on the court." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (citing Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933)); see Volunteer Medical Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 228 (6th Cir.1991) (remanding for consideration whether injunction improperly premised upon alleged violation of § 1985(3) should be reinstated on state grounds of trespass, nuisance, or tortious interference with business); Roe v. Operation Rescue, 919 F.2d 857, 867-68 (3d Cir.1990) (affirming injunction on unchallenged state grounds of trespass and intentional interference with contractual relations without addressing merits of § 1985(3) claim upon which injunction was also based).
 
 
 17
 Thus, only a federal claim that is " 'so attenuated and unsubstantial as to be absolutely devoid of merit' " would preclude the district court's exercise of jurisdiction over the state trespass and public nuisance claims presented here. Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 1378-79, 39 L.Ed.2d 577 (1974) (quoting Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904)). Given our ruling in Terry I, and the general state of the law on this issue, see National Org. for Women v. Operation Rescue, 914 F.2d at 585 (collecting cases), it appears clear that plaintiffs-appellees have asserted a substantial federal claim adequate to ground jurisdiction over the state trespass and public nuisance claims. This conclusion is subject, however, to the caveat that the petition for certiorari in Bray v. Alexandria Women's Health Clinic poses for review, inter alia, the question: "Are respondents' claims under 42 U.S.C. 1985(3) so insubstantial as to deprive federal courts of subject matter jurisdiction?", 59 U.S.L.W. 3508 (U.S. Jan. 21, 1991) (No. 90-985), and the grant of certiorari in Bray was not qualified regarding the questions to be considered by the Supreme Court. See --- U.S. ----, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991).
 
 
 18
 B. Contentions of Respondents-Appellants Not Foreclosed by Terry I.
 
 
 19
 Respondents-appellants, who were not parties to Terry I, have presented a number of arguments that are not foreclosed by Terry I, which we now address.
 
 
 20
 1. Asserted Failure to Comply with Fed.R.Civ.P. 4(j).
 
 
 21
 Rule 43(a) of the Civil Rules of the United States District Court for the Southern District of New York provides that a "proceeding to adjudicate a person in civil contempt of court ... shall be commenced by the service of a notice of motion or order to show cause." Where the alleged contemnor has not yet appeared in the action, "service shall be made personally, in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons." Id.
 
 
 22
 Respondents-appellants, upon whom service of orders to show cause was made as required by Rule 43(a), contend that they should be regarded as the unknown John Doe(s) and Mary Doe(s) named in plaintiffs-appellees' complaint, see Fed.R.Civ.P. 10(a); i.e., as defendants "presently unknown to plaintiffs, said fictitious names being intended to designate organizations or persons who are members of defendant organizations, and others acting in concert with any of the defendants who are engaging in, or intend to engage in, the conduct complained of herein." They accordingly claim status as defendants, rather than respondents, in this case.
 
 
 23
 It follows, they argue, that service of the orders to show cause was required to comply with Fed.R.Civ.P. 4(j), which provides in pertinent part:
 
 
 24
 If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.
 
 
 25
 Because they were not served with the orders to show cause "within 120 days after the filing of the complaint," or (as they alternatively contend in their reply brief) within 120 days of the demonstrations for which they were adjudged in contempt, respondents-appellants contend that plaintiffs-appellees "must begin their entire injunction case afresh against the Respondents, not having served them in time to participate in the case against the four known defendants."
 
 
 26
 Respondents-appellants cite Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080 (3d Cir.1988), and Rankel v. Greenburgh, 117 F.R.D. 50 (S.D.N.Y.1987), in support of this position, but these cases are not on point. Napier's only mention of Rule 4(j) was in relation to the improper service of named, not fictitious, parties. See 855 F.2d at 1088 n. 4. Similarly, Rankel involved a motion to dismiss a named, not fictitious, party, and that motion was denied. See 117 F.R.D. at 54-55 & n. 6.
 
 
 27
 We agree with the district court that "it is absurd to suggest that plaintiffs are forced to do the impossible: foretell which individuals will subsequently act in concert with defendants in violation of an injunctive order of the Court and serve them within 120 days of filing the complaint." New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 403. We conclude that the time constraints of Rule 4(j) do not apply to service in connection with a contempt proceeding arising out of violation of injunctions validly issued pursuant to Fed.R.Civ.P. 65(d). We next address respondents-appellants' claim that the injunctive orders in this case were not so issued.
 
 
 28
 2. Compliance with Fed.R.Civ.P. 65(d).
 
 
 29
 Respondents-appellants further contend that they were not "in active concert or participation" with defendants, as required by Rule 65(d), because their actions "were independently motivated" by their "political, social and moral positions on the subject of ... abortion." We have no reason to doubt this representation, but it is unavailing as an escape hatch from Rule 65(d). The rule is directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation.
 
 
 30
 Respondents-appellants also contend that the district court's injunctions failed to "set forth the reasons for [their] issuance" and, because some of the defendants were fictitiously named, were not "specific in terms" and did not "describe in reasonable detail ... the act or acts sought to be restrained," all as required by Rule 65(d). We disagree. The requirement of a statement of reasons "applies to the order granting the relief and does not require that the injunction itself set forth the reasons why the court granted the order." 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2955, at 539 (1973). Here, the district court issued an extensive opinion that set forth the reasons for the injunctions. See New York State Nat'l Org. for Women v. Terry, 704 F.Supp. at 1257-64. As to respondents-appellants' other contention, the naming of fictitious defendants did not render the injunctions insufficiently precise because respondents-appellants had fair notice that acting in concert with the named defendants would subject them to contempt proceedings.
 
 
 31
 3. Service upon Talluto and LaPenna.
 
 
 32
 As noted earlier, Southern District Civil Rule 43(a) required that the order to show cause for the contempt motion be served upon respondents-appellants "personally, in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons." Respondents-appellants Florence Talluto and Michael LaPenna contend that service upon them did not comply with this mandate.
 
 
 33
 The district court's order to show cause provided that if "plaintiffs are unable to effect personal service after two attempts, they may serve respondents at their last known address by Federal Express." New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 400. Respondents were so served.[7] The district court concluded that its order allowing such service was proper under Fed.R.Civ.P. 4(c)(2)(C)(i), which allows service upon individuals "pursuant to the law of the state in which the district court is held." See New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 400-01.
 
 
 34
 The pertinent law is N.Y.Civ.Prac.L. & R. 308 (McKinney 1990). The district court concluded that service was proper under paragraph 5 of section 308, which permits personal service upon a natural person "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one [personal service], two ['leave and mail' service[8]] and four ['nail and mail' service[9]] of this section." The issue then, is whether personal, leave and mail, and nail and mail service were all "impracticable." See Dobkin v. Chapman, 21 N.Y.2d 490, 497-99, 236 N.E.2d 451, 455-56, 289 N.Y.S.2d 161, 167-68 (1968); Dime Savings Bank of New York, FSB v. Mancini, 169 A.D.2d 964, 964-65, 564 N.Y.S.2d 859, 859-60 (3d Dep't 1991); Hitchcock v. Pyramid Centers of Empire State Co., 151 A.D.2d 837, 838-39, 542 N.Y.S.2d 813, 814-15 (3d Dep't 1989); Giordano v. McMurtry, 79 A.D.2d 548, 548-49, 433 N.Y.S.2d 583, 584 (1st Dep't 1980), aff'd mem., 53 N.Y.2d 962, 424 N.E.2d 555, 441 N.Y.S.2d 668 (1981).
 
 
 35
 LaPenna and Talluto argue that nail and mail was practicable. The district court disagreed, emphasizing that " 'those who have flagrantly violated the court's orders are not disposed to make themselves readily available for personal delivery of notice that they are to be prosecuted for contempt of those orders.' " New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 401 (quoting Department of Housing Preservation & Dev. v. 24 West 132 Equities, Inc., 137 Misc.2d 459, 462, 524 N.Y.S.2d 324, 327 (App. Term 1st Dep't 1987), aff'd mem., 150 A.D.2d 181, 540 N.Y.S.2d 711 (1st Dep't 1989), appeal dismissed, 74 N.Y.2d 841, 545 N.E.2d 872, 546 N.Y.S.2d 558 (1989), cert. denied, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1035 (1990)). The district court thought that Department of Housing "suggested that the manner of service is sufficient if it is 'reasonably calculated under all the circumstances to apprise respondents of the pendency of the action,' " New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 401 (quoting Department of Housing, 137 Misc.2d at 462, 524 N.Y.S.2d at 327), and concluded that the service here was so calculated. Id.
 
 
 36
 We read Department of Housing differently. The "reasonably calculated" formulation stated by Appellate Term was addressed to the due process standard under the United States Constitution. This is made clear by the Appellate Term's citation, immediately following the quoted passage, of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), where it is stated that: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action...." In Department of Housing, the contemnor was served by leave and mail, see 137 Misc.2d at 461, 524 N.Y.S.2d at 326, and the court emphasized that respondent had been served in accordance with "one of the methods delineated in [section 308]." Id. at 462, 524 N.Y.S.2d at 327. Accordingly, the service in Department of Housing complied with the constitutional standard and with section 308.
 
 
 37
 In this case, by contrast, there was concededly no compliance with paragraphs 1, 2, and 4 of section 308, so the issue becomes the impracticability standard of paragraph 5. The district court found impracticability because plaintiffs presented evidence of the "practical difficulties" they would encounter in effectuating service "because of respondents' demonstrated disregard for the authority of the Court." New York State Nat'l Org. for Women v. Terry, 732 F.Supp. 401. This does not amount to a showing, however, that nail and mail service would not have been practicable.
 
 
 38
 As noted earlier, the district court's order to show cause allowed service by Federal Express at a respondent's "last known address" after two unsuccessful attempts at personal service. See id. at 400. Plaintiffs-appellees provided Federal Express with the names and last known addresses of LaPenna and Talluto. No reason appears why this information would not have sufficed for compliance with section 308(4); i.e., a mailing to the "last known residence" of LaPenna and Talluto, and affixation of the documents to the door of each's "actual place of business, dwelling place or usual place of abode." Id. The order to show cause did not require any showing that there was any confusion as to the residence or dwelling place of any respondent-appellant, i.e., any impracticability, before allowing a bypass of section 308(4).
 
 
 39
 It was claimed at oral argument that the bulky motion papers involved could not practically have been "nailed" to any door, but section 308 requires only that they be "affix[ed]," and this may "be accomplished by use of a nail, tack, tape, rubber band or some other device which will ensure a genuine adherence." Pacamor Bearings, Inc. v. Foley, 92 A.D.2d 959, 960, 460 N.Y.S.2d 662, 664 (3d Dep't 1983). We conclude that, in the absence of any showing, or requirement of a showing, that nail and mail service was impracticable, service under section 308(5) should not have been authorized by the district court. See Dobkin, 21 N.Y.2d at 497-99, 236 N.E.2d at 455-56, 289 N.Y.S.2d at 167-68; Dime Savings Bank, 169 A.D.2d at 964-65, 564 N.Y.S.2d at 859-60; Hitchcock, 151 A.D.2d at 838-39, 542 N.Y.S.2d at 814-15; Giordano, 79 A.D.2d at 548-49, 433 N.Y.S.2d at 584.
 
 
 40
 When service is made pursuant to Fed.R.Civ.P. 4(c)(2)(C)(i), federal courts have no authority to stray from the requirements set by state law, here section 308, even if service in disregard of those requirements would still be constitutional. "[S]ervice of process must comply not only with constitutional requirements, but also with the provisions of the state statute." FDIC v. Schaffer, 731 F.2d 1134, 1136 (4th Cir.1984). Numerous federal courts have refused to exercise jurisdiction over parties who were not served in accordance with the pertinent state statute. See, e.g., Recreational Properties, Inc. v. Southwest Mortgage Serv. Corp., 804 F.2d 311, 314-15 (5th Cir.1986); Delta S.S. Lines, Inc. v. Albano, 768 F.2d 728, 730 (5th Cir.1985); National Trust for Historic Preservation v. 1750 K Inv. Partnership, 100 F.R.D. 483, 485-86 (E.D.Va.1984), aff'd mem., 755 F.2d 927, 929 (4th Cir.1985); Sun Sys. Prefabricated Solar Greenhouses, Inc. v. Venuti, 596 F.Supp. 1516, 1517 (E.D.N.Y.1984). Similarly, we conclude that the district court lacked jurisdiction over Talluto and LaPenna.
 
 
 41
 4. The Rule 11 Sanction against Washburn.
 
 
 42
 The district court imposed a Rule 11 sanction upon counsel-appellant A. Lawrence Washburn, Jr. because he sought to renew a motion that asserted: "(1) lack of subject matter jurisdiction over the underlying claims raised by plaintiffs in this action, (2) lack of subject matter jurisdiction because of the pending appeals[,] and (3) improper service of the Order to Show Cause under Rules 4(c)(2)(C)(i) and (ii)." New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 409. The court concluded that resubmission of the motion amounted to "vexatious conduct, which unduly delayed the adjudication of the contempt proceedings." Id. at 412.
 
 
 43
 The court previously invited renewal of the motion, which had originally been submitted upon inadequate papers, but cautioned that "in the event the motion is renewed and denied as frivolous, the Court would entertain a motion by plaintiffs for appropriate sanctions." New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 410 (emphasis added).
 
 
 44
 One of the grounds asserted in the motion has been determined on appeal not only to be nonfrivolous, but meritorious, resulting in reversal of the district court's ruling as to service upon Talluto and LaPenna. Thus, in view of the terms of the district court's invitation to resubmit the motion, it would be unfair and inappropriate to sanction Washburn for having done so, and we accordingly reverse the judgment imposing a Rule 11 sanction upon Washburn. See Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 321-22 (2d Cir.1990); Motown Prods., Inc. v. Cacomm, Inc., 849 F.2d 781, 785-86 (2d Cir.1988) (per curiam).
 
 
 45
 This result is consistent with our recent ruling in Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1254-55 (2d Cir.1992). In that case, we decided that it was not an abuse of discretion for the district court to impose Rule 11 sanctions upon a party that brought a motion (ultimately vindicated by our decision on appeal as meritorious) which was barred at that juncture in the district court by the law of the case doctrine, and also untimely under a local rule. Here, by contrast, Judge Ward invited resubmission of a motion that had not originally been presented on proper papers, and was thus initially denied without prejudice, but warned against an ultimate determination that the motion was frivolous. The ensuing determination of frivolousness, and the accompanying sanction, cannot survive a ruling on appeal that a key ground of the motion was not only nonfrivolous, but in fact a correct statement of the pertinent law.Conclusion
 
 
 46
 We reverse the judgments against respondents-appellants Florence Talluto and Michael LaPenna, and counsel-appellant A. Lawrence Washburn, Jr.; we affirm the judgments of the district court in all other respects.
 
 
 47
 SNEED, Senior Circuit Judge, Concurring Separately:
 
 
 48
 I concur in the court's reversal of the district court's orders directed at respondents-appellants Talluto, LaPenna, and counsel-appellant. I concur in Part A of Judge Mahoney's opinion solely because of the compelling force of the law of this circuit as set forth in New York State National Organization for Women v. Terry, 886 F.2d 1339 (2d Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990) ("Terry I ").
 
 
 49
 KEARSE, Circuit Judge, concurring and dissenting:
 
 
 50
 With all due respect, I dissent from so much of the majority opinion as reverses the district court's imposition of sanctions on defendants' attorney A. Lawrence Washburn, Jr., pursuant to Fed.R.Civ.P. 11 for a frivolous motion for reargument. The basis of the reversal, i.e., that the district court erred in deciding the underlying merits of one of the issues as to which reargument was sought, is contrary to our recent decision in Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F.2d 1245 (2d Cir.1992) ("Virgin Atlantic "). Further, even if that were a permissible basis for reversal of a sanctions award, there were two other indisputably sound bases for the district court's imposition of sanctions, making it inappropriate for us to do more than vacate the imposition of sanctions and remand to permit the district court to reconsider the matter of sanctions in light of our decision.
 
 A. The Service-of-Process Issue
 
 51
 The motion that prompted the imposition of sanctions was threefold. It sought reargument of the district court's contempt order on the grounds of " '(1) lack of subject matter jurisdiction over the underlying claims raised by plaintiffs in this action, (2) lack of subject matter jurisdiction because of the pending appeals[,] and (3) improper service of the Order to Show Cause under Rules 4(c)(2)(C)(i) and (ii).' " (Majority Opinion ante at 396.) As to the third item, improper service, the fact that we have reversed the court's original decision does not mean that the sanctions award with respect to reargument must be reversed.
 
 
 52
 The imposition of Rule 11 sanctions is to be reviewed under an abuse-of-discretion standard. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). In Virgin Atlantic, we held that though the court had erred on the merits of a certain question, it nonetheless had discretion to impose sanctions against a federal agency for an attempt to reargue the question on the sole basis of intervening decisions of a district court in another circuit. We recognized that the district court had imposed sanctions for the agency's attempt to reargue a decided issue on the basis of insufficient new support, "not ... for the substance of its motion." Virgin Atlantic at 1255.
 
 
 53
 In the present case, despite the district court's repeated admonitions that Washburn's motion required the presentation of supporting affidavits and that frivolous filings could warrant sanctions, the motion to reargue lacked even the pretense of any new ammunition. (See Respondent's Memorandum Dated August 30, 1989, at 3: "[n]o new facts or affidavits are submitted and no new legal arguments are advanced".) Though the majority states that the district court "invited" the renewed motion, plainly the court did not invite it to be made on precisely the same papers as those on which it had just been denied. The district court's sanctions opinion, New York State National Organization for Women v. Terry, 732 F.Supp. 388 (S.D.N.Y.1990) ("District Court Sanctions Opinion"), described the sequence. After rejecting counsel's original oral motion to dismiss on the grounds of improper service, "[t]he Court advised Washburn to submit a motion in proper form, with supporting affidavits, if he wished to move to dismiss or quash service on behalf of respondents." Id. at 410. Counsel then submitted the motion in writing, but again without affidavits. In denying the written motion "without prejudice," "[t]he Court explained that the motion, as it was addressed to the issue of service, was inadequate in its present form, as there were no affidavits by any of respondents concerning service." Id. In connection with this explanation and again in granting an extension of time, the court cautioned that Rule 11 sanctions might be imposed if a renewed motion were frivolous. Nonetheless, in connection with Washburn's renewal of the written motion,
 
 
 54
 [n]o notice of motion was filed, nor were any supporting affidavits attached, despite the directive of the Court and the requirements of Civil Rule 3. No new arguments were advanced in the memorandum, with the exception of a section arguing that attorneys possess immunity from sanctions for their conduct in a judicial proceeding and, therefore, that Rule 11 sanctions cannot be imposed upon them.
 
 
 55
 Id. Thus the court concluded that "[w]hile the Court does not impose sanctions lightly, an objective analysis of Washburn's conduct in resubmitting the motion without affidavits or additional support, and in substantially the same manner as it had been when previously denied by the Court, leads only to the conclusion that Washburn violated Rule 11." Id. at 412. On Washburn's motion to vacate the Rule 11 sanctions, the court stated that the "sanctions were not imposed for the filing of the original cross-motion, but only for the resubmission of the cross-motion without additional support." New York State National Organization for Women v. Terry, 737 F.Supp. 1350, 1366 (S.D.N.Y.1990).
 
 
 56
 On this record, it is difficult for me to reconcile the majority's reversal of the imposition of sanctions against Washburn with either the abuse-of-discretion standard of review established by the Supreme Court in Cooter & Gell or with our Court's decision in Virgin Atlantic.
 
 
 57
 B. The Other Reargument Grounds that Elicited Sanctions
 
 
 58
 Even if reversal on the merits of the original motion were a basis for reversing an award of sanctions for a repetitive attempt to reargue, in the present case the sanctions order should not be reversed outright because it was based on two additional rearguments by Washburn on which defendants have not prevailed on appeal. First, Washburn renewed the argument that the court lacked subject matter jurisdiction of the action. As a matter of principle, since that question was then pending on appeal, the district court could not revisit it. Second, he argued that the district court did not have the power to hold defendants in contempt because defendants had appealed from the entry of the injunction whose terms they had flouted. In light of the fact that defendants had twice tried, once in the district court and once in this Court, to obtain a stay of the injunction and had twice been denied, defendants' renewed challenge to the court's power to hold them in contempt--like counsel's assertion that attorneys are immune from sanctions for frivolous court filings--was frivolous. Thus, on these two issues, the district court stated that "[t]he arguments advanced by Washburn were each previously rejected by the Court and, with the exception of the challenge to the manner of service ..., were each manifestly frivolous. When an attorney submits, or resubmits, a motion that he knew, or should have known, was meritless, Rule 11 sanctions are appropriate." District Court Sanctions Opinion, 732 F.Supp. at 412.
 
 
 59
 Imposition of sanctions on account of these frivolous challenges to the court's jurisdiction plainly was not an abuse of discretion. Accordingly, even if Virgin Atlantic did not exist as precedent, the most this Court could properly do is remand for the district court's consideration of whether to exercise its discretion to impose sanctions on these two bases alone, in light of the reversal on the merits of the service issue.
 
 
 
 *
 The Honorable Joseph T. Sneed, Judge of the United States District Court for the Ninth Circuit, sitting by designation
 
 
 [1]
 The appeals are complicated by various filings of notices of appeal followed by several vacaturs and reinstatements. After a careful review of the record, however, we are persuaded that all defendants-appellants and respondents-appellants, and counsel-appellant, are properly before us, except that respondent-appellant Bistate Operation Rescue Network has not perfected an appeal from the judgment entered against it on July 9, 1990 for $3,190.02 in attorneys' fees. We note that appeals have been noticed, presumably by inadvertence, on behalf of defendant Reverend James P. Lisante, against whom no order or judgment was entered, and respondent Bernard Nathanson, against whom no order or judgment was entered and whom the district court explicitly found not to have committed any civil contempt. See 732 F.Supp. at 406-07, 414. We note also that plaintiffs-appellees assert in their brief that respondent-appellant Adelle Nathanson has not taken an appeal, without contradiction by defendants-appellants and respondents-appellants in their reply brief or at oral argument. The record appears to indicate, however, that after stipulating to withdraw her then-pending appeal on January 24, 1991, respondent-appellant Adelle Nathanson filed a fresh notice of appeal on January 25, 1991
 
 
 [2]
 The court's oral decision as to respondent-appellant Christopher Slattery was rendered November 8, 1990. He filed a notice of appeal on December 6, 1990, and the formal order and judgment against him was entered December 26, 1990. His appeal is validated by Fed.R.App.P. 4(a)(2)
 
 
 [3]
 See 697 F.Supp. at 1328. This injunction, adopted by the district court, was originally issued by the New York State Supreme Court, from which this action was removed. See id
 
 
 [4]
 The district court ruled as follows
 Respondent B.O.R.N. is adjudged in civil contempt of this Court's October 27 Order and assessed coercive civil penalties in the amount of $25,000. Respondent Lee is adjudged in civil contempt of the Court's May 4 Order, October 27 Order and Permanent Injunction and assessed coercive civil penalties in the amount of $100,000. Respondent Foreman is adjudged in civil contempt of the Court's May 4, Order and Permanent Injunction and assessed coercive civil penalties in the amount of $25,000. Respondents McMonagle and White are adjudged in civil contempt of the Court's Permanent Injunction and assessed coercive civil penalties in the amount of $25,000. Respondent LaPenna is adjudged in civil contempt of the Court's May 4 Order and October 27 Order and assessed coercive civil penalties in the amount of $25,000. Respondent Talluto is adjudged in civil contempt of the Court's October 27 Order and Permanent Injunction and assessed coercive civil penalties in the amount of $50,000. Respondent Adelle Nathanson is adjudged in civil contempt of the Court's October 27 Order and assessed coercive civil penalties in the amount of $25,000. Respondent Pearson is adjudged in civil contempt of the Court's Permanent Injunction and assessed coercive civil penalties in the amount of $25,000. Respondent Bernard Nathanson is not adjudged in civil contempt.
 
 
 [732]
 F.Supp. at 413-14. As to respondent-appellant Christopher Slattery, see supra note 2 and accompanying text
 
 
 [5]
 These fees were requested pursuant to 42 U.S.C. § 1988 (1988), which provides in pertinent part that:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [6]
 Section 1985(3) provides in pertinent part:
 If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State ... from giving or securing to all persons within such State ... the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 Id. (emphasis added).
 
 
 [7]
 Respondent-appellant Adelle Nathanson was also served in this manner, but no argument on this issue is advanced in her behalf on appeal. See supra note 1. The district court found that she had waived any objection to service, invoking Fed.R.Civ.P. 12(b)(5). See New York State Nat'l Org. for Women v. Terry, 732 F.Supp. at 400 n. 6
 
 
 [8]
 "Leave and mail" refers to:
 delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and ... either mailing the summons to the person to be served at his or her last known residence or ... mailing the summons by first class mail to the person to be served at his or her actual place of business.
 Id. § 308(2).
 
 
 [9]
 "Nail and mail" refers to:
 affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and ... either mailing the summons to such person at his or her last known residence or ... mailing the summons by first class mail to the person to be served at his or her actual place of business.
 Id. § 308(4).